IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANA C.-M.,

            Plaintiff,

      v.                                  Civil Action No.
                                             3:20-CV-0296 (DEP)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

            Defendant.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

LACKMAN GORTON LAW FIRM     PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        MOLLY CARTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

_____

[1]     Plaintiff's complaint named Andrew M. Saul, in his official capacity as the Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi took office as the Acting Social Security Commissioner. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(3)(c), are cross-motions for judgment on the pleadings.[2]  Oral argument was heard in connection with those motions on July 14, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is

---

[2]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is
GRANTED.

2)      The Commissioner's determination that the plaintiff was not
disabled at the relevant times, and thus is not entitled to benefits under the
Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based
upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      July 23, 2021
            Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
ANA C.-M.,

                        Plaintiff,

vs.                           3:20-CV-296

KILOLO KIJAKAZI, COMMISSIONER OF
SOCIAL SECURITY,


                        Defendant.
-------------------------------------------x
```

        Transcript of a **Decision** held during a

Digitally-Recorded Telephone Conference on July 14,

2021, the HONORABLE DAVID E. PEEBLES, United States

Magistrate Judge, Presiding.

                A P P E A R A N C E S

                (By Telephone)

For Plaintiff:      LACHMAN GORTON LAW FIRM
                    Attorneys at Law
                    P.O. Box 89
                    1500 East Main Street
                    Endicott, New York  13761-0089
                      BY:  PETER A. GORTON, ESQ.


For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of the General Counsel
                    JFK Federal Building, Room 625
                    15 New Sudbury Street
                    Boston, Massachusetts 02203
                      BY:  MOLLY CARTER, ESQ.


            *Jodi L. Hibbard, RPR, CSR, CRR*
        *Official United States Court Reporter*
                *100 South Clinton Street*
            *Syracuse, New York  13261-7367*
                  *(315) 234-8547*

1          (The Court and all counsel present by

2               telephone, 2:16 p.m.)

3          THE COURT:  All right.  Let me begin by thanking

4     both of you for excellent presentations, you presented me

5     with quite an interesting complex case with a wealth of

6     medical and expert opinion evidence contained in the

7     administrative transcript.

8          I have before me a challenge to the Commissioner's

9     determination finding that plaintiff was not disabled at the

10    relevant times and therefore ineligible for the benefits

11    which she sought.  The challenge is brought pursuant to 42

12    United States Code Section 405(g) and 1383(c)(3).

13         The background is as follows:  Plaintiff was born

14    in June of 1966 and is currently 55 years of age.  She stands

15    5 foot 4 inches in height and has at various times weighed

16    between 166 and 199 pounds.  Plaintiff is divorced.  She has

17    children who live in Puerto Rico with their father.  The

18    plaintiff moved from Puerto Rico approximately three years

19    ago and has lived in New Jersey and more recently in

20    Binghamton or the Binghamton area in various apartment

21    settings.  At points she was living alone, at other times she

22    was living with a granddaughter.  Plaintiff has a GED and

23    while in school in Puerto Rico attended regular classes.  She

24    also has a certification in the area of phlebotomy.

25    Plaintiff is right-handed.  She has, is equivocal as to

1    whether she has a driver's license, at one point it was

2    suspended.  Plaintiff stopped working sometime in 2011.  Her

3    past positions have included as a retail clerk, a private

4    security guard, a child care assistant, a bus aide, a

5    laborer, an airline or airplane cleaner, and self-employed as

6    a hair stylist.  Beginning in October of 2019, plaintiff

7    began being paid approximately 18 to 39 hours per week to

8    care for her mother and that position included various other

9    tasks including cleaning house.

10            Physically, plaintiff suffers from degenerative

11   disk disease of the lumbar spine, a right knee meniscal tear,

12   status post surgery repair which occurred in December of

13   2016, asthma, a bilateral foot disorder, described as plantar

14   fascial fibromatosis, an obstructive sleep apnea condition,

15   headaches, and peripheral neuropathy of the lower

16   extremities, and diabetes.  She has also had a cochlear

17   hearing transplant surgery on her left ear in June of 2009

18   and her right ear in June of 2010.  She's had multiple foot

19   surgeries, the latest of which was 2017, she underwent a

20   laminectal discectomy of the L3-L4 region in September of

21   2015, as I indicated, right knee surgery in December of 2016.

22   She reports having been struck as a pedestrian by a car in

23   2003, leading to some of the physical conditions.  She was

24   also attacked by dogs at one point.

25            Mentally plaintiff suffers from depression, bipolar

4

disorder, anxiety, post-traumatic stress disorder, and major
depressive disorder.  One of the causes for her mental health
condition was the murder of her son in June of 2012.  She has
undergone no psychiatric hospitalization.  There is some
evidence that at some point she underwent counseling
approximately one time per month.

Plaintiff has seen multiple doctors over time.  Her
general practitioner was a nurse practitioner, Scott Rosman.
She has also seen orthopedic surgeon Dr. Eric Seybold.  She
has seen Dr. Anne Calkins for her back and pain management,
Dr. Zia Shah, a pulmonologist, Dr. Brandy Benjamin,
Dr. Robert Webster, a psychiatrist, Dr. James Hogan, a
podiatrist, Dr. Ahmed Shoaib, described as a primary
physician, Dr. James Vincens, Licensed Clinical Social Worker
Kyle Webb, Nurse Practitioner Amy Cron, and Dr. Khaula
Rehman, a psychiatrist she saw on two occasions.

In terms of activities of daily living, plaintiff
is able to bathe, dress, cook, clean, shop, do laundry, care
for her granddaughter and her mother, attend school.  She
apparently tried to take a medical assistant's course at
Elmira Business Institute but left school reportedly to care
for her mother.  She is able to use a computer, travel, shop,
walk, socialize with friends, attend medical appointments,
watch television, she does not like to take public
transportation but does on occasion.  The evidence is

1   equivocal as to whether she smokes.  She reportedly quit but

2   may be using E-cigarettes.  At one point she was smoking

3   three packs of cigarettes per day.  She is also a past user

4   of heroin and crack cocaine.

5          This case has a relatively tortured procedural

6   history.  Plaintiff previously filed six applications for

7   benefits, the most recent prior to this application was

8   denied in March of 2012.  On February 28, 2013, she filed an

9   application for Title II and Title XVI benefits, alleging an

10  onset date of May 1, 2011.  There were subsequent

11  applications on August 28, 2015 and December 6, 2017.  Those

12  applications, the three of them were consolidated for

13  consideration at some point in this case.

14         There have been eight administrative hearings

15  conducted to address plaintiff's various claims in the

16  record.  Several relate to the prior application, including

17  June 21, 2007, November 5, 2007, October 9, 2009.

18  December 23, 2012 was a hearing addressing the current

19  applications before Richard DeStefano.  There was a hearing

20  on October 2, 2014 before Barry Ryan, July 30th, 2015 before

21  ALJ Barry Ryan, and October 11, 2017 hearing before Judge

22  Elizabeth Koennecke, and another before that same ALJ on

23  November 26, 2019.  There were three administrative law judge

24  decisions addressing the current applications, the first from

25  Barry Ryan in August of 2015.  That resulted in a consent

6

1   remand when action was commenced in a District Court.  The

2   remand occurred on February 1, 2017 and it resulted in a

3   decision from the Social Security Administration Appeals

4   Council on May 7, 2019, vacating the earlier decision and

5   remanding.  A second ALJ decision was issued on November 3,

6   2017 by Administrative Law Judge Elizabeth Koennecke.  That

7   ultimately resulted in a reversal by United States Magistrate

8   Judge Thérèse Wiley Dancks on March 11, 2019.  ALJ Koennecke

9   issued a third decision on January 7, 2020, which became a

10  final determination of the agency, after 60 days.  This case

11  was commenced on March 16, 2020, and is timely.

12          In her decision, ALJ Koennecke painstakingly

13  recounts the medical evidence in the case and the reasons for

14  her decision.  She also addresses earlier decisions and is

15  somewhat exercised over having been reversed apparently, but

16  I will say before I address her opinion, I do agree with

17  Mr. Gorton that quantity does not equal quality, but in this

18  case the decision is comprehensive and, as you will see, I

19  think supported.

20          The administrative law judge in her decision

21  indicated first that plaintiff was last insured on

22  December 31, 2012.

23          At step one, she found that plaintiff had not

24  engaged in substantial gainful activity since May 1, 2011,

25  the alleged onset date.  She did acknowledge that plaintiff

1    was hired to care for her mother and paid and while she did

2    not consider that substantial gainful activity, she did take

3    it into account when addressing the residual functional

4    capacity of the plaintiff.

5         At step two, ALJ Koennecke found that plaintiff

6    suffers from severe impairments that impose more than minimal

7    limitations on her ability to perform work-related functions,

8    basic work-related functions including a mental impairment

9    that was variously characterized over time, asthma or

10   emphysema, obstructive sleep apnea, degenerative disk disease

11   of the lumbar spine, small meniscal tear of the right knee

12   status postsurgical repair of right knee, and a bilateral

13   foot disorder.

14        At step three, she concluded that plaintiff's

15   conditions do not meet or medically equal any of the listed

16   presumptively disabling conditions set forth in the

17   regulations and she considered quite a few listings

18   addressing both the mental and the physical limitations and

19   conditions experienced by the plaintiff.

20        ALJ Koennecke next concluded that notwithstanding

21   her impairments, plaintiff is capable of performing sedentary

22   work with exceptions related primarily but not exclusively

23   to, I should say primarily but not exclusively to her mental

24   condition because one could argue that the regularly attend

25   to a routine and maintain a schedule has physical and mental

8

1    components to it.

2            Applying that RFC finding with the assistance of

3    testimony from a vocational expert, ALJ Koennecke concluded

4    that plaintiff is capable of performing her past relevant

5    work as a hair braider and therefore concluded, without

6    addressing step five, that plaintiff was not disabled at the

7    relevant times.

8            As you know, the court's function in this case is

9    extremely limited.  I must determine whether correct legal

10    principles were applied and the resulting determination is

11    supported by substantial evidence.  Substantial evidence

12    being defined as such relevant evidence as a reasonable mind

13    would find sufficient to support a conclusion.  The Second

14    Circuit has noted in *Brault v. Social Security Administration*

15    *Commissioner*, 683 F.3d 443 from June of 2012 that this is an

16    extremely deferential and stringent standard.  In *Brault*, the

17    court also noted that under the substantial evidence

18    standard, once an ALJ finds a fact, that fact can be rejected

19    only if a reasonable fact finder would have to conclude

20    otherwise.

21            Plaintiff raises essentially four arguments in

22    support of her challenge to the determination.  She argues

23    that it was error not to credit Dr. Hogan's opinions as an

24    acceptable medical source and a treating source.

25            Secondly, she argues that the ALJ substituted her

1    judgment for medical opinions and wrapped into that is a

2    failure to include a sit/stand option into the residual

3    functional capacity finding.

4         The third relates to the failure to properly

5    analyze plaintiff's mental limitations and focus on

6    semi-skilled work in the face of Dr. Loomis' opinion of

7    April 4, 2013 at page 704 to the effect that plaintiff

8    suffers from marked impairments in maintaining attendance and

9    concentration.

10        And fourth, she argues that she is not able to

11   perform her past relevant work because of her deficits in

12   concentration, work pace and attendance.

13        I will note that notwithstanding Judge Dancks'

14   order to the contrary, I did read and consider plaintiff's

15   reply brief in addressing this case.

16        The first argument relates to opinions of Dr. Hogan

17   who has issued several reports suggesting that over time

18   plaintiff's foot conditions have worsened, citing 3022, 3023,

19   3024, and 2939 of the administrative record.  Dr. Hogan has

20   given various opinions concerning plaintiff's ability to walk

21   and stand and the need to elevate feet.  In March of 2015, he

22   opined that plaintiff can stand only two out of eight hours

23   and must elevate her feet 25 percent of the time.  At another

24   point, he opined that plaintiff can only walk or stand for

25   five minutes out of each hour.  Dr. -- as the Commissioner

1    concedes, Dr. Hogan as a podiatrist does qualify as an

2    acceptable medical source under the regulations which were in

3    effect at the time of plaintiff's application.  And so, as a

4    treating physician, his opinions regarding the nature and

5    severity of plaintiff's impairment normally would be entitled

6    to considerable deference, if supported by medically

7    acceptable clinical and laboratory diagnostic techniques and

8    not inconsistent with other substantial evidence.  His

9    opinions, however, are not necessarily controlling if they

10   are contrary to other substantial evidence in the record,

11   including opinions of other medical experts.  And of course,

12   under such cases as *Veino v. Barnhart*, 312 F.3d 578, Second

13   Circuit 2002, it is for the administrative law judge to

14   resolve any conflicts in the medical evidence.

15          In this case, Dr. Hogan's opinions were discussed

16   by Administrative Law Judge Koennecke at 1931 of the

17   administrative transcript and they were given little weight.

18   And ALJ Koennecke explained why.  Despite Dr. Hogan stating

19   that plaintiff's condition worsened, at the hearing plaintiff

20   claims that her condition remained the same.  She also

21   explained that the opinions are inconsistent with plaintiff's

22   activities of daily living, including her ability to attend

23   school and care for her mother.  She discussed inconsistent,

24   the fact that the opinions were inconsistent with findings at

25   page 1932, and erroneously, as we said, at page 1935 treated

1    Dr. Hogan as not an acceptable medical source.

2              I have reviewed the treatment of Dr. Hogan's

3    opinions in the context of and considering him as a treating

4    source, and although there was not the rote discussion of the

5    *Burgess* factors, which include length of treatment

6    relationship and frequency of examination, nature and extent

7    of the treatment relationship, the degree to which the

8    medical source has supported his or her opinion, the degree

9    of consistency between the opinion and the record as a whole,

10   whether the opinion is given by a specialist, and other

11   evidence as set forth in both *Burgess* and 20 C.F.R. Section

12   404.1527 and 416.927, I do find that several of those have

13   been -- were specifically addressed, and relying on *Estrella*

14   *v. Berryhill*, 925 F.3d 90, Second Circuit 2019, I find that a

15   searching review of the record fails to disclose any

16   violation of the treating source rule when it comes to

17   Dr. Hogan's opinion.  To the extent that she was in error in

18   treating him as a treating source, I find the error is

19   harmless, and there would be no useful purpose served in

20   remanding for consideration of Dr. Hogan's opinions and

21   treatment as a treating source.  *Lugo v. Commissioner of*

22   *Social Security*, 2017 WL 4005621 from the Northern District

23   of New York, September 11, 2017.  So I find no error in

24   response to point number one.

25             In terms of the analysis of medical opinions,

1    there's a wealth of information in this record.  I didn't

2    count them up but we have medical source statements from

3    multiple individuals addressing both the physical and mental

4    impairments of the plaintiff.  Dr. A. Periakaruppan issued

5    opinions on March 1, 2018, that's at 2034 to 2036, and

6    March 5, 2018, 2850 to 2851, discussed and given some weight

7    by the administrative law judge at 1929 to 1930 and again at

8    1935.

9           Dr. Gilbert Jenouri, an examining consultant,

10   issued reports on April 4, 2013, 706 to 710, November 17,

11   2016, 3098 to 3101, and February 14, 2018, 2843 to 2846,

12   given some weight by the administrative law judge.  She

13   discussed those opinions at 1930 and 1935.

14          Dr. Hogan, we've addressed, issued many opinions.

15   They were discussed by the administrative law judge at 1931,

16   1932 and given little weight.

17          Dr. Eric Seybold issued opinions at –– on June 16,

18   2016, that's at 824 to 825, discussed and given little weight

19   at 1932, 1935, 1940, and 1942.

20          Dr. Ahmed Shoaib issued an opinion on September 4,

21   2014 at pages 759 to 760, discussed and given little weight

22   at 1914, 1931 to 1932, 1935, 1940, and 1942.

23          Dr. Anne Calkins issued a report, or opinions on

24   October 11, 2017, October 18, 2019, May 11, 2019 at 3067 to

25   3071 and 2432, given little weight and discussed at 1931,

1   1935, 1940, and 1942.

2        Dr. Echevarria issued an opinion on June 6, 2013

3   finding no evidence of a disorder.  174 to 180.  On the

4   mental side of things –– and Dr. Echevarria actually

5   addressed the mental as well.

6        Dr. M. Juriga, psychologist, issued an opinion, a

7   nonexamining psychologist, February 22, 2018, at 2036, 2039,

8   given some weight 1937.

9        Dr. Khaula Rehman issued an opinion on May 15,

10  2019, I noted that she only saw the plaintiff twice.  That

11  was reported at 2944 to 2945.  It was given some weight but

12  not great weight, discussed at 1939 to 1942.

13        Dr. Mary Ann Moore issued an opinion, a

14  consultative examiner, on February 14, 2018 at 2835 to 2840,

15  given some weight but not great weight, 1938.

16        Dr. T. Harding, state agency consultant, at 2055 to

17  2068, given some weight, discussed at 1937.

18        LCSW Kyle Webb, July 8, 2015, it was found at 952

19  to 953.  Nurse Practitioner Amy Cron and LCSW Webb issued an

20  opinion on March 2, 2015, 836 to 838, given little weight,

21  1940, 1942.

22        Dr. Robert Webster, September 3, 2014, 757 to 758,

23  given little weight, 1940, 1942.

24        Dr. Cheryl Loomis, consultative examiner, April 4,

25  2013, 702 to 705, given great weight and discussed at 1936.

1          Dr. Echevarria, June 6, 2013, 160 to 171, and again

2     174 to 186, given some weight, 1937.

3          And lastly, Dr. Amanda Slowik, another examining

4     psychologist I believe, that was from November 17, 2016, it

5     appears at 3105 to 3110, given some weight but not great

6     weight, 1938.

7          The focus of the attack on the weight of the

8     evidence is on both the off-task and absence portion based on

9     Dr. Shoaib, Dr. Seybold, and Dr. Calkins, and the requirement

10    of elevating feet, Dr. Hogan.  That's the physical.

11         On the mental side, plaintiff points to marked

12    impairment to attention and concentration from Dr. Slowik,

13    moderate limitation in concentration and pace, Dr. Moore, and

14    off-task and absences from Dr. Slowik, Dr. Loomis,

15    Dr. Webster, Nurse Practitioner Cron, and LCSW Webb,

16    Dr. Moore, and Dr. Juriga.

17         It is for the administrative law judge, as pivotal

18    of course to the determination, to affix the plaintiff's

19    residual functional capacity, or RFC, which is defined as a

20    range of tasks she is capable of performing notwithstanding

21    her impairments.  Ordinarily an RFC represents a claimant's

22    maximum ability to perform sustained work activities in an

23    ordinary setting on a regular and continuing basis, meaning

24    eight hours a day, for five days a week or an equivalent

25    schedule.  And of course an RFC determination is informed by

1    consideration of all of the relevant medical and other

2    evidence and must be, like anything else, supported by

3    substantial evidence to withstand scrutiny.

4         On the physical side, the RFC determination,

5    clearly there's conflicting evidence.  There's something in

6    those medical opinions for everyone.  The physical side is

7    supported by Dr. Jenouri and Dr. Periakaruppan which were

8    relied on by the administrative law judge.  It's well

9    established that consultative opinions can override a

10   treating source's opinion.  *James C. v. Commissioner of*

11   *Social Security*, 2020 WL 6445907, Northern District of

12   New York, November 3, 2020.

13        On the mental side, the RFC says semi-skilled work

14   but the vocational expert clearly considered the position as

15   both generally performed and as the plaintiff performed it

16   and concluded that plaintiff is capable of performing it if

17   limited to simple instructions and tasks.  That occurs at

18   1063 to 1064, and that finding or that -- the plaintiff's

19   ability in that regard is supported by the opinions of

20   Dr. Echevarria, plaintiff's activities of daily living, the

21   the opinion of Dr. Loomis, the opinion of Dr. T. Harding,

22   Dr. Moore, and Dr. Juriga.

23        The plaintiff is asking this court to reweigh the

24   medical evidence which of course, under *Veino*, would be

25   improper.

1          Focusing specifically on off-task and absenteeism,

2     Drs. Echevarria, Harding, Juriga, and Periakaruppan are state

3     agency consultants that found that, notwithstanding

4     plaintiff's physical and mental limitations, she is able to

5     perform work.  I know that the POMS, the argument that the

6     Commissioner raises is that under the POMS, those consultants

7     were charged with determining whether plaintiff can perform

8     on a sustained basis and adhere to a schedule, and although

9     the POMS are not binding on the court, they are, they provide

10    context because I think from those opinions you can infer

11    that those state agency consultants concluded plaintiff is

12    able to perform on a sustained basis and meet a schedule.

13    The administrative law judge also relied to some degree on

14    Dr. Rehman's opinions, that's found at 1939.  Under *Veino*,

15    it's for the ALJ to resolve conflicts.  There clearly is

16    conflict in the record.  The ALJ did not rely solely on her

17    lay opinion to reject medical opinions.  She explains

18    specifically in fairly significant detail why neither the

19    mental nor physical impairments precluded plaintiff's ability

20    to maintain a schedule.  Substantial evidence supports that

21    determination, and I note, by the way, that it is perfectly

22    proper for an administrative law judge to scrutinize whether

23    medical evidence supports an opinion, 20 C.F.R. Sections

24    404.1527(c)(2) and (3) and 416.927(c)(2) and (3).

25          In terms of the sit/stand option, Dr. Jenouri three

1    times and Dr. Periakaruppan's opinion support the lack of

2    need for -- to alter positions.  Dr. Jenouri found that

3    plaintiff was moderately limited in standing, sitting,

4    walking, sitting.  Dr. Periakaruppan indicated that plaintiff

5    could sit, stand, and walk six hours with normal breaks.

6    Those limitations are not inconsistent with sedentary work

7    with normal breaks.  *Raymond C. v. Commissioner of Social*

8    *Security*, 2020 WL 42814, Northern District of New York,

9    January 3, 2020.  And in his opinion in that case, Chief

10   Judge Glenn T. Suddaby cites other cases that support that

11   proposition.

12          The administrative law judge explained why she

13   afforded little weight to the contrary opinions by

14   Dr. Seybold and Dr. Calkins, including based on exam findings

15   and activities of daily living.  I find that it is adequately

16   explained and the rejection of the sit/stand option is

17   supported by substantial evidence.

18          The fourth argument is a step four challenge and

19   it's dependent on the challenge to the residual functional

20   capacity and I find that, having rejected those arguments,

21   that substantial evidence supports and in particular the

22   vocational expert's testimony supports plaintiff's ability to

23   perform her past relevant work as a hair braider.  It's

24   discussed by Administrative Law Judge Koennecke at 1972 to

25   1974, and so I am going to -- I'm sorry, that's the expert

1   testimony.  So I'm going to grant judgment on the pleadings

2   to the defendant and order dismissal of plaintiff's

3   complaint.  Thank you both, I hope you have a good summer.

4                MR. GORTON:  Thank you, your Honor.

5                MS. CARTER:  Thank you, your Honor.

6                    (Proceedings Adjourned 2:49 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     CERTIFICATE OF OFFICIAL REPORTER

2

3

4            I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5     Official Realtime Court Reporter, in and for the

6     United States District Court for the Northern

7     District of New York, DO HEREBY CERTIFY that

8     pursuant to Section 753, Title 28, United States

9     Code, that the foregoing is a true and correct

10    transcript of the digitally-recorded proceedings

11    held in the above-entitled matter and that the

12    transcript page format is in conformance with the

13    regulations of the Judicial Conference of the United

14    States.

15

16                     Dated this 23rd day of July, 2021.

17

18

19                     /S/ JODI L. HIBBARD
                       _____

20                     JODI L. HIBBARD, RPR, CRR, CSR
                       Official U.S. Court Reporter
21

22

23

24

25